All rise. The Illinois Appellate Court, 3rd Division is now in session. Justice Peacecoff, the bill is presiding. Please be quiet when you see it. Good morning, Madam Clerk. Will you please call the first case? When she calls the first case, I'd like for the attorneys to step up to the podium. I want you to tell us your names, who you represent, and approximately how long your argument will take. Madam Clerk, please call the first case. Good morning, Counsel. Good morning. May it please the Court, my name is Keely Hillison. I represent the defendant, Appellate Safeway Insurance Company. I anticipate my argument will take 15 minutes for opening and 5 minutes for rebuttal. Okay, very good. Good morning, Counsel. Good morning. My name is Robert Oliver. I represent the appellee and the plaintiff, Bonifacio De La Torre. Spell your, your, Robert Oliver, correct? Yeah, O-L-I-V-E-R. Okay, Ms. Hilson, why don't you proceed with your argument? The attorneys should be advised that the judges have read the briefs and the cases and we're familiar with your arguments. My recommendation is that you get to your best argument. All right. Thank you. Mercado v. Prairie State Farmers. It's an Illinois case that's right on point. It, it marks a bright line rule. The insurance company fulfills its duty to defend when it hires an attorney to defend the insured in a lawsuit. And your position is all the insurance company has to do is hire an attorney and that's enough? That is it. That's your position? And the attorney then is responsible for the conduct of the litigation. The law in this state prohibits the insurance company from practicing law or interfering with the attorney's conduct of the law. The attorney is responsible to the client. The insurance company can't interfere with that. So the insurance company exculpates itself from responsibility once they provide an attorney and that attorney files an appearance. And then the insurance company has no more responsibility? It's not that the insurance company exculpates itself. The insurance company is complying with what the state of the law is in Illinois. If for some reason the attorney withdraws or dies, then obviously the insurance company has to replace the attorney. But as long as the attorney goes ahead and files his appearance and participates in the lawsuit and there's no indication that the attorney has stopped representing the client, then brocado applies. In brocado, was there a default judgment entered against the insured? I don't think it's clear in brocado. It's not clear in brocado what exactly they thought the attorneys did wrong. And in this case, it's not clear why the default judgment was entered. There's a default order that was entered due to the client's own failure to comply with discovery. That was filed later on, about a year later, by the default judgment. And the default judgment itself is silent as to why it was entered. It's been my experience, counsel, that the attorney will assist the client in preparing discovery. Is that your experience in practicing law? I think sometimes that is the case. But in my experience in practicing law, very often it's very difficult to get the client to comply with discovery. You can mail stuff out to them. You can send a private detective out to them. But sometimes they just won't comply. Is there any evidence in the record that the insured refused to assist the attorney in preparing the discovery? The default order itself, which says that the default was entered due to Ruben De La Torre's failure to comply with discovery. It doesn't say it's entered due to Attorney Streisack's failure to comply with discovery. As I recall, counsel, Streisack didn't file a bill, correct? So do we have any evidence as to what action he took to assist the insurer in preparing to answer the discovery? There is no evidence as to what Streisack did other than that he filed his appearance, filed his pleadings, filed discovery requests on behalf of Mr. De La Torre and, as far as we know, continued to represent him. He never withdrew. He was never fired. He was never discharged. None of that happened. You say that there is a duty of the attorney to participate in the litigation, correct? Yes, that's the duty of the attorney. To participate in the litigation. Yes. And let's assume that the attorney leaves the country, does nothing, files an appearance, sends out some discovery and disappears from the scene. Is that participating in the litigation, in your opinion? I guess it depends on what's going on in the case. If nothing is going on in the case, then. Well, let's say this case. This case? Well, I can't say because it's not what happened in this case. Well, essentially it was. He was out to lunch. I mean, he's not around. We don't know if he was or not. Well, then we have to assume that he was. I don't think you can assume that because it's the plainest burden on their motion for summary judgment to prove that all of the elements that are necessary to establish the right to summary judgment. And what they're saying is that, Safeway, you knew this attorney wasn't taking care of the case, and that's just not true. Safeway had no indication that Streisand wasn't taking care of this case. Safeway hired this attorney. Didn't they get notice of the default judgment? They didn't have some indication that somebody wasn't taking care of the case? Safeway didn't get notice of the default judgment, the 1995 default judgment, for approximately a year after it was entered. They're not saying that Safeway, as I understand it, they're not saying that Safeway didn't do anything about the 1995 default judgment. As I understand it, the plaintiff is saying, Safeway, you should have done something about this 1994 discovery default order. Not a judgment, but a default order. What Safeway did was Safeway mailed it to the attorney. Not that Safeway was required to do that, but Safeway did as a matter of course. Attorney, we hired you to represent the client on this. This is within your realm. You're conducting this litigation. We're an insurance company. We're not allowed to practice law. We have to rely on the attorney who was hired to do that. The attorney has a duty as a matter of law. Independent of the insurance company, he has a duty to his client. And we don't know if he fulfilled that duty. They didn't present any evidence to that. There's no evidence that he didn't. Your client has a duty, too. Can you insulate yourself by virtue of someone else's failure to perform their duty? We're not trying to insulate ourselves. We comply with the law. Mercado has been the law in Illinois for 25 years. Mercado says the insurance company fulfills the duty to defend by hiring an attorney to defend the insured. And that's what we did. And this is not like the Thorson v. Roth case where the insurance company hired an attorney supposedly to defend the hospital, but the attorney never filed an appearance, never participated in the case, and the case went on for two years. And despite everyone's request trying to get this attorney into the case, he never did. That's not the case here. Safeway hired attorney Streisack to defend Ruben De La Torre in response to a default order that Safeway received. And Mr. Streisack did get into the case. He got that default order vacated, filed his appearance, discovery request, pleadings, and as far as we knew, his business as usual. Safeway received the discovery order, but Safeway didn't have a duty to micromanage the attorney. It was the attorney's duty to take care of that. And there's no evidence. So we're not sure about Safeway's duty. Would you please explain to me what it is that Safeway is required to do in a case such as this? What are their duties? What must they do? When the insurer receives notice of a lawsuit with a complaint containing allegations within or potentially within coverage of the policy, it's the duty of the insurer to hire an attorney to defend that insured. And that's what Safeway did. And that's all they're required to do? That's the extent of their duty? Except for settlement. But that's not at issue here. We're not saying that Safeway had no duty to settle a case, but that's not the issue here. And in this particular case, since there was a coverage question, the duty to settle didn't really come into play. We're talking strictly about the duty to defend. What does an insurer have to do to fulfill its duty to defend? Brocado tells us that. It's not just Brocado. It's the rules that Brocado is based on. Rule 5.4C of the Illinois Rules of Professional Conduct and 705 ILCS 220-1 and 705 ILCS 220-5, I believe it is. Corporations are not allowed to practice law. Only attorneys can. Practicing law and monitoring the litigation? You're talking about micromanaging the litigation. Really, that's not the issue. It's monitoring what's occurring, isn't it? I think you can't really draw that distinction. What's the distinction between monitoring and micromanaging? And there's, other than the bright line that Brocado draws, there's really nowhere to draw that distinction. If you depart from Brocado, you're getting on a slippery slope. What's going to be enough? Even the judge in this case couldn't tell us what would be enough. She said, well, mailing the order to Stryzak, Attorney Stryzak, wasn't enough. You should have made a phone call. No doubt if we had come in and said, well, we did make a phone call to Stryzak, she would have said, well, that's not enough. You should have gone to his office. You should have checked the court file. Who's to say what's enough once you get into micromanaging the attorney's conduct? That's the attorney's duty. How can a non-attorney supervise and control an attorney in the conduct of litigation? That's why we have attorneys. That's why attorneys are licensed in this state. But isn't this different than Brocado because there the lawyer was actually defending the insured? We don't have that here. That's not different because the attorney in this case was actually defending the insured. What evidence? There's no evidence he wasn't. They've made all kinds of allegations with nothing to support it. They're making all kinds of allegations with nothing to support it. And for whatever reason, the judge below assumed that that was correct. But this is summary judgment. You cannot infer or construe things against the respondent and in favor of the movement. We responded to the summary judgment. The summary judgment was against us. The judge should have construed all inferences in our favor. In the absence of any indication, any evidence that Streisand didn't continue to defend Mr. Delatorre, the court should have assumed that he did. Certainly can't enter summary judgment against us by assuming that he didn't defend. This is not here after a trial. Excuse me. Did you submit any statements of his legal work? You didn't, right? We didn't. You didn't. And I don't know what the financial arrangement was. I don't know if he was on an annual retainer or what. If that were the case, he wouldn't have had a bill for this particular case. I don't know what the arrangement was. I don't think it's pertinent. But what's pertinent is that Safeway hired him and he promptly got into the case, vacated the default, and filed pleadings appearance and commenced his representation of Mr. Ruben Delatorre. And if there were any problem with that representation, then it was up to Mr. Delatorre to either notify Safeway or sue Mr. Streisand for malpractice. He didn't do that. I'm sorry. Could you speak to the issue of damages? Conway talks to the issue of damages. Conway says two important things that are binding in this case, that are controlling in this case. First of all, it says an insurer is not liable for an excess judgment unless it was guilty of bad faith and it breached its duty to defend. Secondly, it talks about damages. Conway says even if the insurance company breached its duty to defend, even if the insurance company was guilty of bad faith, the insured is only entitled to damages traceable to the breach. And what would that be in this case? The plaintiff has to show that Ruben Delatorre was somehow damaged by the breach. Even if you assume that there was a breach, what are the damages? If Mr. Bonifacio Delatorre had a $250,000 case from the get-go because of the nature of his injuries and the negligence of Ruben Delatorre, then there was no damages even if there was a breach. The plaintiff has a burden to show that the judgment would have been less but for some breach of the duty. As a practical matter, how would that occur? How would they show that it could have been a lesser amount? Just as in any legal malpractice case, there's a case within a case. What they're doing is essentially charging Safeway with legal malpractice. That's not a cause of action that's recognized in the state. But even if you're going to allow them to do that, I think there's no basis for do that, but if you allow them to do that, they still have to meet the elements for a legal malpractice action, including proving the case within a case. So the only way to do that would be through using the elements of a legal malpractice case. Is that your argument? Yes. First of all, I don't think Safeway can be held liable for legal malpractice. But if you disagree with me on that, they still have to meet the elements of that. Okay, but isn't there an alternative in that in Wolfburg, the court said that the very fact of entry of a judgment itself constitutes damage and harm sufficient to permit recovery in a cause of action essentially for a breach of duty arising out of a contractual relationship. Why wouldn't that language apply here? Well, first of all, Wolfburg is a 1968 case from the first district, so it predates Conway. Conway says that you have to prove damage is traceable to the breach. So to the extent that Wolfburg conflicts with Conway's limitation on the damage is recoverable from an insurance company, Conway has to control it. No matter what you're going to call this cause of action against the insurance company, Conway dictates that you have to prove damage is traceable to the breach. Okay, but in the way you're saying you have to do that, is this case within a case, which is not what Conway says? Because Conway wasn't talking about attorney malpractice. And the plaintiff here is trying not to talk about attorney malpractice because the plaintiff knows that Illinois law prohibits assignment of an attorney, a legal malpractice action. So what they're trying to do, they're trying to go through the back door and do what they can't do through the front door. For whatever reason, Ruben Delatorre chose not to sue attorney Streisand for malpractice, maybe because he didn't think Streisand committed malpractice. Maybe he just chose not to. So that's out the door. He can't sue Safeway for malpractice, so he calls it something else. But really, that's what it is. He's saying, Safeway, you're liable to me because this attorney screwed up. Would you say that this is a unique case? There isn't any precedent on point. I would say it's unique except for Boccato. The exact details of what type of malpractice is alleged by the defense attorney may differ. But otherwise, it's right on point. We have an insured who is sued. The insurance company hired a defense attorney to defend him. The attorney did get into the case and defend him to some extent. The insured, unhappy with the result, turned around and said, attorney, you messed up, so I'm suing you for malpractice, although in this case they didn't sue the attorney directly. And insurance company, I'm suing you because the attorney messed up. And Boccato says, no, you can't do that. The insurance company is not liable for the mistakes of the attorney. Your remedy is a legal malpractice suit against the lawyer. And that's the remedy here. That remedy was available to Ruben De La Torre. There's no need for this court to create a new cause of action. They're asking you to create a new hybrid cause of action combining the tort of legal malpractice and contract action, breach of an insurance contract. There's no need and no basis for this court to create such a new cause of action. Counsel, why don't you bring your argument to a conclusion? Thank you. In conclusion, the plaintiff did not prove the elements necessary to establish entitlement to summary judgment. They didn't file their own affidavit or deposition. I ask that you reverse the summary judgment in favor of Mr. De La Torre and enter summary judgment in favor of Safeway. Thank you. Thank you, counsel. Mr. Allo? Good morning, Your Honors. May it please the Court. I'd first like to address the argument made by the appellant in terms of this case and whether there's a breach of a duty to offend. I think this case is all about having actual notice that the lawyer was asleep at the switch for not performing their duty. The insurance company received notice of the default, and for all practical purposes, they knew that their lawyer wasn't doing anything. The factual background of the case and the request to admit show that no statements were received from STRIZAC. No attorney fees were paid to STRIZAC. There was no written communication with STRIZAC and Safeway from a period of December 1992 to June 1998. It's a long time, six years, to not communicate with a lawyer in writing while a case is pending. Counsel, do you have a case that you can cite to us which indicates that the insurance company has a duty to go beyond retaining an attorney for their insurance and having him file an appearance? There is no case on point other than all I can do is distinguish Boccato. I think that the case that Judge McGrath brought into play shows that was the Massachusetts case. Let me find the case for you, which is in the record of proceedings brought forth. Let me find the actual case name for you. We have it. Metropolitan, excuse me. It's your position that the insurance company has a duty beyond retaining an attorney for their insurance and having him file an appearance? Yes, Your Honor. What other duties does the insurance company have? I think it's just a practical application that you have a duty to defend your client under the terms of the policy. You need to make sure your attorney is doing work. You don't need to monitor or control. You certainly don't need to practice law, but I think a common sense attorney-client relationship would dictate that they have a duty to the insured. The insurance company should make sure that their lawyer is actually doing something. According to your opponent, the attorney may be guilty of malpractice, and his nonfeasance or misfeasance is not connected in any way to the insurance company because they did all they were supposed to do. I think they're independent duties. I think there's, under the terms of the insurance contract, there's an actual duty to defend the insured. In this case, the facts are clear that Safeway was not fulfilling that duty. They knew they weren't fulfilling the duty. I think the general gist of the case, what we can assume and what we can sort of read between the lines is that Safeway was banking on winning its coverage contest in the DEC action. They knew their attorney wasn't performing, and they sort of ignored it. What evidence is in the record that you can tell us about that will help us conclude that the insurance company was aware of the fact that their attorney was not doing anything? There is a notice from Mr. Ballew that went to ‑‑ let me show you. Let me tell you the document number. You see, I'm somewhat concerned that both attorneys are arguing that we're supposed to draw inferences in a summary judgment case. There was a notice to Safeway of the default order. Safeway's claims, Vice President Tomeri admitted that it was received, and then they admitted that they mailed notice of the default to Stryzak and no further action was taken. So the insurance company, Safeway, did have notice of the default, document C703 in the record. According to your opponent, she says that it was the attorney's duty to correct that default, not theirs, because they can't practice law. But certainly they could call their attorney up and say, what's going on? Were you out of town? Did you make an error? Is there a docketing mistake? And the facts show that nothing happened after that notice was provided. There was no follow‑up, and that's what the trial court ruled. There was, in the record of proceedings, Judge McGrath went at lengths to show that basically you need to follow up, let's make sure that the attorney's not dead, is what she said in the oral argument. But didn't you just say at the outset there's no duty to monitor? No, Your Honors. I said that there is no duty to practice law. There would be a duty to, I think just a reasonable standard to follow up with your attorney, make sure that your attorney is actually fulfilling the duty to defend the insured under the terms of the policy. Your opponent says the insured didn't contact them to tell them, the insurance company, that the attorney wasn't doing anything. I think it's a tough proposition to assume that a litigant would be informed enough to know what's going on with the litigation. It's not a pro se litigant. They rely upon the attorney. They rely upon the insurance company to fulfill their duty to insure them. Your opponent also makes the argument that it was the insured who was not complying with discovery. Well, there's no evidence in the record to show that. Under the Gruse case, what we showed is that there's a $250,000 default judgment. Under the Gruse case, it states that they've got to present evidence. Absent any evidence to the contrary, I think that the $250,000 default speaks for itself in terms of what that implies. There are no 213F allegations that there was some error by Rubin. There was no other evidence brought forward in the depositions. There was basically one affirmer of defense, and it was denied. No further evidence that Rubin had done anything wrong. To be honest, they never deposed Rubin. Let's go to the question of damages. Why wouldn't this be a case where, for purposes of damages, it would be similar to a malpractice case? That was the argument. This case is different than all the other cases that the court has analyzed, simply because of the breach of the contract, the breach of the duty to defend, is as a result of an inaction or a failure or a neglect, not a refusal to defend. So that's the key difference between the other case law and what we have here. It's basically deriving, the damages are being derived from breach of a contract. The authority that we've cited, Amateur, Second, Couch, all state that it's the proximate cause of the actual damages resulting from the breach. In this case, the breach occurred. There was no defense. There was a $250,000 default judgment. That was the result of the breach of the duties to defend. You don't have to establish the proximate cause. The proximate cause, we have the default. We have the – We have that, and that would be fine if it was a judgment that was within the policy limits. But in this instance, there's an excess judgment. Correct, Your Honor. So in that regard, wouldn't you then have to establish proximate cause? Well, I believe that the default was tendered. The default notice was tendered. The insurance company had notice of it. The default judgment was entered for the same reason. There's no evidence to the contrary. So I think in this case, there's no intervening or superseding event that's within the record. So the evidence that we've brought forward shows, as a result of the failure to defend, the judgment was entered. You don't believe that the plaintiff, in this case, had a burden to establish that it could have been for a lesser amount, ultimately, that judgment, had not this breach occurred? I believe that the $250,000 was proved up in court, and I think to retrace our steps and move back from today to 1994 to try to reconcile the difference between the judgment amount and what could have been a judgment amount on a trial, I think it would be pure speculation. And I think, in essence, what the court would be asking to do under those circumstances is say, well, what would have happened if Safeway had defended? What would have happened if Safeway had done this? How do you reconcile your position then with Penwell, which talks about establishing proximate cause for the damages in excess? Well, I think in Conway that the line of reasoning is somewhat different because we're dealing with a tort claim, number one. We're kind of dealing with a hybrid there, though, aren't we? We're dealing with contract principles in Conway as well as the tort that's there. You've still got to establish a duty and a breach, right? Correct. So it's kind of both. Well, in Conway they have the proximate cause, but if you look beyond Conway into the reasoning of the Green case, Green analyzes Conway, Reese, and basically they come up with what they view the Illinois holding in Conway and Reese to be. In the Green case, they basically say that Conway complicated the issue of proper damages for breach of duty to defend. And they state, if the breach of the duty to defend caused the judgment in excess of the policy limits, the occurred can recover, regardless of bad faith. That's the question. Did it cause it? Did it cause the excess? I think in this case we've put forth the $250,000 default judgment. The insured in this case had no defense at trial. There was a prove up done. Do you see no distinction if the judgment is within the policy limit or if the judgment is in excess of the policy limit? No, Your Honor. No distinction in your judgment? No, Your Honor. Let me ask you this question. Why would anyone bring a claim in a case like this that sounds in tort and assume the burden of having to establish bad faith if they could bring a contract action, an action that sounds in contract where all they have to do is establish the duty and the breach and we can essentially imply causation by virtue of the judgment in excess of the policy? There's no need to establish causation as it relates to the excess portion of the judgment. Why would anyone ever proceed on a bad faith claim? Well, I think the facts in this circumstance are unique, as the trial court pointed out, in that the numbers just work in that effect in this case. It's a general principle because you established or you set forth the notion that there's no distinction between a judgment within policy and a judgment in excess of policy. So with that in mind, with your premise in mind, why would anyone ever bring a claim that sounds in tort where they have to take on the added burden of establishing bad faith if they can simply pursue a contract claim, establish a duty plus a breach, which they'd have to do in tort, and then move right to their judgment? I think there might be a different standard of proof or different elements to each case. How so? I think this case is unique, as the trial court pointed out, in terms of that, but I don't have a specific answer as to that circumstance. There aren't any cases that are similar to this, even around the country, that you've found. Correct. I did not. The trial judge did find two. I'm sorry, one case directly on point. Massachusetts, but even that case didn't. The Metropolitan. There were no cases that had the same factual pattern. Counsel, will you please summarize your argument? Thank you, Your Honor. I think this case is clear that there's a notice of a default and a failure to defend. It was a very common sense step that the insurance company could have taken to protect its insured. They chose not to. They went on for a period of several years without performing any defense. I think the main issue that distinguishes this case with other past Illinois cases is that, number one, that's a breach of contract and a breach of duty to defend. Number two, it's a pure contract case and not a tort case, as all the other line of cases in Illinois show. However, I think the reasoning is in line, and I think that taken with all the authorities that the trial court had cited, Couch, Appleman, and the Massachusetts State case, I think that damages are in line as well, and on an excess case can be granted as a proximate result, as a result of the breach. Those are the actual consequential damages of the $250,000. Always, right? What you're saying, again, I want to be clear, is your position that a judgment within the policy limits and a judgment outside or in excess of the policy limits should be treated the same in all instances and that the judgment itself was evidence of proximate cause? Correct, Your Honor. Okay. Thank you very much, Mr. Oliver. Thank you. Ms. Hiltson, some brief rebuttal, but specifically address the issue of damages. Damages? Counsel is trying to get this court to follow federal cases and out-of-state cases addressing damages and duty. Mercado is a Fourth District case, right? It is a Fourth District case, but it applies laws, Rule 5.4, the Code of Professional Responsibility, and I believe it's called the Attorney Act, that apply throughout the First District and the state. But as far as Conway applies throughout the state, Conway is a Supreme Court case, and Conway says if you're going to hold an insurance, in order to hold an insurance company liable for a judgment exceeding the policy limits, for breach of a duty to defend, there's got to be not only the breach of the duty to defend, but also bad faith, and only entitled to damages traceable to the breach. And that's where you get back to, you have to prove, you know, what were the damages from the breach? You have to show that but for this breach, the judgment would have been less. There's a difference here in that in your usual breach of duty to defend, the lawyer actually is involved, does something, or they file for a preliminary or declaratory judgment, the insurance company does something, right? There's some kind of action going on. Here, the lawyer is assigned, and after filing his appearance and filing a discovery paper, we don't see the lawyer again. We don't know if we do or not. But let's assume we don't. Assuming that, but I don't think you can assume that for purposes of a summary judgment. I understand. But once that happens, is there a difference between that situation and a situation where a lawyer is involved? The fact that the lawyer disappeared brings it outside of maybe the idea of bad faith. I disagree with that. I think the Boccato case fits that situation as well. If the insurance company has actual knowledge, and this goes to what Mr. Becker said in his deposition, we filed that transcript in support of our motion for summary judgment or in response to theirs, I'm not sure which one. But Mr. Becker said in his deposition under Boccato, the insurance company, if they have actual knowledge that the attorney is asleep at the wheel and not participating, then maybe they need to investigate and get another attorney. But that's not the case here. There's no evidence that A, Mr. Streisand was asleep at the wheel and not defending, and there's certainly no evidence that Safeway was aware of that. Safeway wasn't aware of that. As I stand here today, I don't think anyone in this courtroom or even Judge McBride knows whether or not Streisand did continue to defend this. Let's assume for the purpose of argument only that he was asleep at the switch, that situation that Mr. Becker talked about. In that case, the fact that there was a judgment entered, wouldn't that be the loss traceable to the breach of contract? No. You still have to show what the amount of the judgment would have been. What would have been the amount of the judgment if he had defended it? If there's a judgment entered for it, and he kind of gets back to essentially proving the case within a case as an attorney malpractice case because that's really what this is, what they're charging. They're trying not to call it legal malpractice, but that's essentially what they're saying. Attorney screwed up, so you're liable to pay the resulting judgment. Well, even if the attorney messed up, if the case was worth, let's say the case was worth $300,000 because the injury was so severe and Ruben de la Torre was so grossly negligent. Well, for whatever reason, they only got a $250,000 judgment. Well, then where's the damage? If the only injury was a hangnail and they got a $250,000 judgment because of the default, because the attorney wasn't there to defend it, then yeah, there's some damage there. But they have to prove that. Would your argument extend to a case where the judgment was within the policy limits? I think even within the policy limits, they would have to, well, they would still have to prove the damages traceable to the breach. I think it would be a lot easier to prove it within the policy limits, especially within this policy because it was a 2040 policy. But in this case, Safeway paid the full limits of the policy to the two other claimants. There were three claimants injured in this accident. I want to address something that counsel said, and I think they've said it repeatedly in this case. They keep saying it's only common sense to follow up, to check, to call. There's no cause of action in the state of Illinois for lack of common sense. Whether it would have been common sense whether another insurance company would have handled it differently, that's not the issue. What is the duty? What is the duty? And on the flip side of that, you have what is the right of the insurance company? What right does the insurance company have to interfere in the relationship between the attorney and the client? To the extreme in that regard, you get the Willis-Caroom case where the insurance company interfered to the extent between the attorney and client that it caused the attorney to withdraw on the eve of trial, leaving the insured undefended, and the insurer was liable for that. So where do you draw the line? What is too much and what is too little interference? I think that's why Boccato makes perfect sense and should remain the law in this state. The insurance company's duty is to hire an attorney to defend the litigation, and if the attorney messes up in doing that, then the attorney, like any other attorney and client, is liable to his client for legal malpractice. Mrs. Wilson, bring your argument to a conclusion. Thank you. There's no Illinois law or case or statute requiring an insurance company to do more to comply with the duty to defend than to hire an attorney to do so. There's nothing in the insurance policy requiring an insurance company to do more than that. There's nothing in the law or the insurance policy requiring the insurer to micromanage or to contact the attorney or the insured. The court below erred in following Massachusetts law when we have, in fact, Illinois law that's right on point. The court below is bound by the Fourth District case. This court is not, but the court below is. But it's well-reasoned and it should be followed. And if, for some reason, this court chooses to depart from Mercado, I don't know where you would draw the line between what an insurance company can do and shouldn't do, but if you choose to depart from that, you should publish an opinion saying that. Henceforward, insurance companies, you have to do something. You have to intervene between the attorney you hire and his client in the litigation. You can't rely on the attorney to conduct the litigation. You have to get involved. And you should say what that line is. You have to call. You have to write, whatever that is. But you shouldn't penalize an insurer, like Safeway, who relied on valid Illinois law, longstanding Illinois law, by hiring an attorney to defend the insured and counting on that attorney to do his job. Safeway shouldn't be penalized for that. And I'd like to just correct one point, also, that counsel said. There was no notice from opposing counsel that Stryzak wasn't defending. The notice was just that default order, the 1994 default order, saying Ruben De La Torre is held in default for failure of Ruben De La Torre to comply with discovery. That's it. That was the notice. It says nothing about Stryzak. So, in conclusion, I would ask that you reverse the summary judgment and enter summary judgment in favor of Safeway because we proved our case. They didn't present all the elements of their case, so we're entitled to summary judgment. If you disagree with me on the summary judgment in favor of Safeway, though, at the very least the case should be remanded because the plaintiff did not prove the case. Thank you. Thank you, counsel. I want to compliment you, Mrs. Hilson, and Mr. Oliver, for your arguments. This case will be taken under advisement.